UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG CARROLL,<br><br>            Plaintiff,<br><br>      v.<br><br>SCOTT, et al.,<br><br>            Defendants. | Case No. 1:20-cv-00086-EPG (PC)<br><br>SCREENING ORDER<br><br>ORDER FOR PLAINTIFF TO:<br><br>(1) NOTIFY THE COURT THAT HE WANTS TO PROCEED ONLY ON HIS <u>BIVENS</u> CLAIM FOR EXCESSIVE FORCE IN VIOLATION OF THE EIGHTH AMENDMENT AGAINST DEFENDANTS LT. SCOTT, OFFICER HOLMES, AND DOE OFFICERS;<br><br>(2) FILE A THIRD AMENDED COMPLAINT; OR<br><br>(3) NOTIFY THE COURT THAT HE WANTS TO STAND ON HIS SECOND AMENDED COMPLAINT, SUBJECT TO THE COURT ISSUING FINDINGS AND RECOMMENDATIONS TO A DISTRICT JUDGE CONSISTENT WITH THIS ORDER<br><br>(ECF NO. 14)<br><br>THIRTY (30) DAY DEADLINE |

## I.    BACKGROUND

Craig Carroll ("Plaintiff") is a federal prisoner proceeding *pro se* and *in forma pauperis*

1

with this civil rights action.  Plaintiff filed the complaint commencing this action on January 15, 2020.  (ECF No. 1).  Plaintiff filed a First Amended Complaint on February 24, 2020. (ECF No. 12).  The Court screened the First Amended Complaint and directed Plaintiff to either: "a. Notify the Court in writing that he wants to proceed only on his claim for excessive force in violation of the Eighth Amendment against Defendants Lt. Scott, Officer Holmes, and Doe Officers; b. File a Second Amended Complaint; or c. Notify the Court in writing that he wants to stand on his First Amended Complaint, subject to the Court issuing findings and recommendations to a district judge consistent with this order."  (ECF No. 13, pgs. 10-11).  On May 1, 2020, Plaintiff filed his Second Amended Complaint.  (ECF No. 14).

The Court has screened the Second Amended Complaint and finds that Plaintiff states a cognizable <u>Bivens</u> claim for excessive force in violation of the Eighth Amendment against Defendants Lt. Scott, Officer Holmes, and Doe Officers.  The Court also finds that Plaintiff's Second Amended Complaint fails to state any other cognizable claims.

The Court will provide Plaintiff with leave to file a Third Amended Complaint, if he believes that additional factual allegations will state additional cognizable claims.  Plaintiff may also choose to proceed only on the claim found cognizable in this order, or to stand on his Second Amended Complaint, subject to the undersigned issuing findings and recommendations to a district judge consistent with this order.

## II.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 11), the Court may also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."

28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

### III.    SUMMARY OF PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff's Second Amended Complaint alleges as follows:

On November 9, 2019, at 10:00 p.m., after lockdown, Lt. Scott, Officer Holmes, and other officers entered Plaintiff's cell and assaulted Plaintiff.  The officers claimed that Plaintiff had masturbated on a female officer.  Lt. Scott and other officers had black gloves on as they entered the call.  Lt. Scott had yellow handcuffs on his black gloves, using them as brass knuckles.  Lt. Scott approached Plaintiff, told him to "keep [his] dick in [his] pants," and punched Plaintiff in the nose area, opening up a gash.  Plaintiff bent over frontwards while he covered his nose with his hands to try to stop the blood flow.

That is when Officer Holmes grabbed Plaintiff's head and rammed it into the locker.  Other officers punched and kicked Plaintiff in the ribs.  Plaintiff fell on the ground.  One of the officers jumped on Plaintiff's back and handcuffed him.  Lt. Scott punched Plaintiff on the side of his head repeatedly, using the handcuffs as brass knuckles.  This opened gashes.  Plaintiff's

cellmate yelled for the officers to stop, and the assault ended.

No camera viewed the incident that took place.

After Plaintiff was placed in ambulatory restraints he was taken to an office to be viewed on video camera. Plaintiff was in restraints with blood running down his head and face area. Then Plaintiff was taken to the hospital.

Lt. Scott made false statements and had false charges referred to the FBI to cover-up the assault committed on Plaintiff.

After returning from the hospital, because of the false statements, two male nurses refused to provide Plaintiff with the pain medication that was prescribed by the hospital doctor. Also, Plaintiff was placed in paper clothing and put into a four-point restraint room with freezing cold air coming out of the vents. He was given no mattress or covers for a whole week. Plaintiff told the duty officer, Mrs. Orio, that he needed toilet paper, covers, and a mattress. He heard her tell the officers to get Plaintiff the items, but they only brought toilet paper. After about a week of sleeping in the corner, cold and with no covers or mattress, Plaintiff put toilet paper on the window to cover it. The SHU officers were about to use the use of force team on Plaintiff, but decided not to because Plaintiff was in the right. So, the officers laughed at Plaintiff and left, but before leaving officer Gibson told Plaintiff that "a person who assaults a staff gets no help."

Plaintiff challenged the Bureau of Prisons calculation of his sentence on a BP Administrative Remedy form, asking for relief. Plaintiff successfully completed BP-8, BP-9, and BP-10. The BP-11 form was at the Central Office in Washington. The Central Office sent the form back, saying that Plaintiff has fifteen days to send certain forms with the BP-11 in order for it to be processed. They gave Plaintiff fifteen days from the date on the receipt, which is November 12, 2019. Because Plaintiff was placed in the four-point restraint room due to the lie that Plaintiff assaulted Lt. Scott and because Plaintiff was discriminated against by staff, Plaintiff did not receive the BP-11 form until December 22. There was no signature or reason why it was delayed. It was handed to Plaintiff by some unknown person who said they were just delivering it to Plaintiff.

Also, Plaintiff sent a sensitive BP-9 to the Western Regional Office on November 19. Plaintiff gave the form to Mailroom Officer Garza.  The form related to Plaintiff being assaulted.  Plaintiff has not heard anything back from the regional office about the situation. Plaintiff also appealed the DHO decision on the assault in March of 2020.  Plaintiff gave the form to the head mailroom supervisor, but has not got a receipt or a decision back yet.

Also, Plaintiff has a civil claim on funds that are in the Court's treasury interest bearing account.  Plaintiff petitioned the Court for his funds, and his petition was denied.  According to law Plaintiff can now appeal to a higher administrative level.  Plaintiff had to file one more form along with the copies of what he filed at the Tx Division, so that the Department of the Treasury can make its decision on the funds.  However, the institution attorney told the Warden that Plaintiff cannot pursue his claim while he is in the SHU because his claim is not a criminal case.  Plaintiff explained that pursuing his legal claim was his First Amendment right to appeal to non-judicial public officials and agencies, but Plaintiff was denied his right.  Plaintiff was denied his right because Lt. Scott made false statements and had false charges referred to the FBI (Plaintiff was in the SHU because of the false statements).

Plaintiff made one final attempt to resolve all complaints and Bureau of Prisons remedies that he did not get back or that got rejected.  Plaintiff filed a BP-8, but it got rejected. The rejection told Plaintiff to do one complaint at a time.  So, Plaintiff put in a sensitive BP-9 to the regional office, explaining that none of his BPs are getting processed or answered. Plaintiff addressed all of his complaints on the sensitive BP-9 and gave it to Mailroom Officer Garza.  Plaintiff got nothing back, so he filed this complaint with the Court.

## IV.    ANALYSIS OF PLAINTIFF'S CLAIMS

### A.  Bivens Actions

In Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have a violated a citizen's constitutional rights."  Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66, 122 S. Ct. 515, 519, 151 L. Ed. 2d 456 (2001).  The Court held that a plaintiff could bring a damages action in federal court against individual federal officers for

violating the Fourth Amendment.  <u>Bivens</u>, 403 U.S. 388, 397 (1971).  <u>Bivens</u> has since been expanded to allow certain suits for violations of the Due Process Clause of the Fifth Amendment and for violations of the Eighth Amendment.  <u>See</u> <u>Davis v. Passman</u>, 442 U.S. 228 (1979); <u>Carlson v. Green</u>, 446 U.S. 14 (1980).

The Court will analyze Plaintiff's complaint under the constitutional standards discussed below.  However, the Court is not precluding Defendants from arguing that there is no <u>Bivens</u> cause of action for the constitutional violations alleged in the complaint.  <u>See</u> <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843 (2017).

### B.  Eighth Amendment Claim for Excessive Force

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not … use excessive physical force against prisoners." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).  "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992).

When determining whether the force was excessive, the court looks to the "extent of injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  <u>Hudson</u>, 503 U.S. at 7 (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 321 (1986)).  While <i>de minimis</i> uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  <u>Hudson</u>, 503 U.S. at 9

Plaintiff's complaint states a cognizable claim for excessive force in violation of the Eighth Amendment against Defendants Lt. Scott, Officer Holmes, and Doe Officers based on the allegations that they assaulted Plaintiff in his cell maliciously and sadistically to cause harm.

### C.  False Statements and Charges

Filing false allegations by itself does not violate a prisoner's constitutional rights so long as (1) the prisoner receives procedural due process before there is a deprivation of liberty as a result of false allegations; and (2) the false allegations are not in retaliation for the prisoner exercising constitutional rights.  Specifically, the Ninth Circuit held in Hernandez v. Johnston, 833 F.2d 1316 (9th Cir. 1987) that inaccurate information in a prison record did not violate the prisoner's due process rights.  Id. at 1318 ("Magistrate Burgess did not discuss Hernandez' separable claim of a due process right to accurate information in his prison record.  We address the issue, and hold that Hernandez was not deprived of liberty by the presence of the challenged statements.").  While the Ninth Circuit has not directly addressed whether a false rules violation report alone violates a prisoner's constitutional rights, this specific issue was thoroughly addressed in a decision of this district, which was affirmed by the Ninth Circuit in an unpublished decision:

> A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.  *See Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989); *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986).  As long as a prisoner receives procedural due process during his disciplinary hearing, a prisoner's allegation of a fabricated prison disciplinary charge fails to state a cognizable claim for relief under § 1983.  *See Freeman,* 808 F.2d at 951 (the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); *Hanrahan v. Lane,* 747 F.2d 1137, 1140–41 (7th Cir.1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided.").
>
> Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California relying on the cases cited above have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983.  *See, e.g., Conner v. Winslow,* No. EDCV 07–218 AG (AN), 2009 WL 1549737 at *18 (C.D. Cal. June 1, 2009); *Williams v. Foote,* No. CV 08–2838 CJC (JTL), 2009 WL 1520029 at *7 (C.D.Cal. May 28, 2009); *Salisbury v. Miller,* No. C 08–4680 MHP (pr), 2009 WL 743925 at *2 (N.D.Cal. Mar.18,

2009); *Meraz v. Reppond,* No. C 08–4540 MHP (pr), 2009 WL 723841 at *2 (N.D.Cal. Mar.18, 2009); *Rodgers v. Reynaga,* No. CV 1–06–1083 JAT, 2009 WL 62130 at *2 (E.D.Cal. Jan.8, 2009); *Drake v. Berg,* No. C 07–3844 PJH (PR), 2008 WL 4482848 at *1 (N.D.Cal. Oct.1, 2008); *Moore v. Thomas,* No. C 06–2105 SBA (PR), 2008 WL 4447726 at *4 (N.D.Cal. Sept.30, 2008); *Deadmon v. Grannis,* No. 06–cv–1382 LAB (WMC), 2008 WL 595883 at *10 (S.D.Cal. Feb. 29, 2008); *Carrillo v. Pena,* No. CIV S–06–2924 RRB DAD, 2007 WL 2994689 at *2 (E.D.Cal. Oct.12, 2007); *Player v. Salas,* No. 04–cv–1761 LAB (WMc), 2007 WL 2781102 at *7 (S.D.Cal. Sept. 21, 2007), *aff'd* 2009 WL 890967 (9th Cir. Apr.3, 2009); *Brookins v. Terhune,* No. CIV S–03–0916 GEB JFM, 2005 WL 3262940 at *4 (E.D.Cal. Nov.28, 2005), *adopted by* 2006 WL 647975, *aff'd* 2007 WL 2827544 (9th Cir. Sept.27, 2007).

Harper v. Costa, 2009 WL 1684599, at *2-3 (E. D. Cal. June 16, 2009), subsequently aff'd, 393 F. App'x 488 (9th Cir. 2010).

The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Id.  Wolff established five constitutionally mandated procedural requirements for disciplinary proceedings.  First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense."  Id. at 564.  Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]."  Id.  Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action."  Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).  Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."  Id. at 566.  And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or … to have adequate substitute aid … from the staff or from a[n] … inmate designated by the staff."  Id. at 570.

Additionally, "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001). "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty. To establish the second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." Spencer v. Peters, 857 F.3d 789, 798 (9th Cir. 2017) (citations omitted).

To the extent Plaintiff is alleging that Defendant Lt. Scott made false statements as part of a prison investigation, Plaintiff has failed to state a claim because there are no allegations suggesting that Defendant Lt. Scott made the false allegations in retaliation for Plaintiff exercising his constitutional rights or that Plaintiff did not receive due process in a prison disciplinary proceeding before he was deprived of a liberty interest.

Plaintiff also alleges that Defendant Lt. Scott had false charges referred to the FBI. It is possible that there could be a constitutional claim for being subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government. However, Plaintiff has not alleged that he was charged with a crime. And, even if he was charged, Plaintiff may not pursue a claim if he was convicted of the crime, unless the conviction has been overturned. Plaintiff may not pursue a section 1983 claim that a criminal conviction is invalid.

In Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the Supreme Court held that:

> when a state prisoner seeks damages in a section 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed….

<u>Heck</u>, 512 U.S. at 487 (emphasis in original).

Accordingly, Plaintiff has failed to state a claim based on his allegations that Defendant Lt. Scott made false statements and had false charges referred to the FBI.

### A.  Processing of Grievances

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."  <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993) (alteration in original) (quoting <u>Azeez v. DeRobertis</u>, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); <u>see also</u> <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment."  <u>Azeez</u>, 568 F. Supp. at 10; <u>Spencer v. Moore</u>, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Plaintiff alleges that, despite multiple attempts, various grievances were not processed.  However, even if his allegations are true, there is no liberty interest in the processing of grievances.  Accordingly, these allegations fail to state a cognizable claim for violation of due process under the Fourteenth Amendment.[1]

### B.  Personal Participation

A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  <u>Preschooler II v. Clark Cnty. Sch. Bd. of Trs.</u>, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or

---

[1] While Plaintiff does not have a liberty interest in the processing of grievances, the Court notes that "[w]hen prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies."  <u>Andres v. Marshall</u>, 867 F.3d 1076, 1079 (9th Cir. 2017).

reasonably should know would cause others to inflict' constitutional harms." <u>Preschooler II</u>, 479 F.3d at 1183 (quoting <u>Johnson</u>, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." <u>Arnold v. Int'l Bus. Mach. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981); <u>see also</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir. 2008).

Plaintiff appears to bring claims against Defendant Lt. Scott for the conditions Plaintiff was subjected to after he returned from the hospital and for Plaintiff being prevented from appealing to the Department of Treasury.[2]  However, there are no allegations suggesting that Defendant Lt. Scott was personally involved in these alleged deprivations.

Plaintiff attempts to connect Defendant Lt. Scott to the deprivations by alleging it was Defendant Lt. Scott's false statements and the false charges he had referred to the FBI that caused the deprivations, but there are no facts alleged suggesting that Defendant Lt. Scott knew or should have known that the false statements and charges would lead to other officers depriving Plaintiff of his constitutional rights.  In fact, Plaintiff alleges that Defendant Lt. Scott made the false statements to cover-up the alleged excessive force incident, not to get other officers to violate Plaintiff's constitutional rights.

## C.  Conditions of Confinement

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993); <u>see also</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).  Conditions of confinement may, consistent with the Constitution, be restrictive and harsh.  <u>See</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981); <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006); <u>Osolinski v. Kane</u>, 92 F.3d 934, 937 (9th Cir. 1996); <u>Jordan v. Gardner</u>, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*).  Prison officials must, however,

---

[2] It is not clear if Plaintiff is attempting to sue any other defendants for preventing him from appealing to the Department of Treasury.  If he is, and if he chooses to amend his complaint, he should clearly state who he is bringing this claim against.  Additionally, Plaintiff should provide additional information regarding this claim, including why he is making a civil claim on the funds, and why he believes he is supposed to appeal a court's decision to the Department of Treasury.  Plaintiff appears to attempt to clarify the claim he is bringing by referring to a form that he attached, but no form is attached to his Second Amended Complaint.

provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation.  Farmer, 511 U.S. at 834.  "First, the deprivation alleged must be, objectively, sufficiently serious."  Id. (citation and internal quotation marks omitted).  Second, "a prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims "is one of deliberate indifference."  Id. (citations and internal quotation marks omitted).  Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety.  Id. at 837.  The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim.  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006).  Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton.  Farmer, 511 U.S. at 835; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

In examining whether the relevant deprivation is objectively, sufficiently serious, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise — for example, a low cell temperature at night combined with a failure to issue blankets."  Wilson v. Seiter, 501 U.S. 294, 304 (1991).

Plaintiff alleges, that, after returning from the hospital, he was placed in paper clothing and put into a four-point restraint room with freezing cold air coming out of the vents.  He was given no mattress or covers for a whole week.  Plaintiff told the duty officer, Mrs. Orio, that he needed toilet paper, covers, and a mattress.  He heard her tell the officers to get Plaintiff the items, but they only brought toilet paper.  After about a week of sleeping in the corner, cold and

with no covers or mattress, Plaintiff put toilet paper on the window to cover it.  The SHU officers were about to use the use of force team on Plaintiff, but decided not to because Plaintiff was in the right.  So, the officers laughed at Plaintiff and left, but before leaving officer Gibson told Plaintiff that "a person who assaults a staff gets no help."

Plaintiff has sufficiently alleged that he was subjected to a sufficiently serious deprivation.  However, Plaintiff has not sufficiently alleged that any defendant acted with deliberate indifference.  Plaintiff appears to bring this claim against only two prison officials: Lt. Scott and K. Gibson.  As analyzed above, Plaintiff has not sufficiently connected Defendant Lt. Scott to this claim.

As to Defendant Gibson, Defendant Gibson's only involvement appears to have occurred at about the same time Plaintiff was no longer deprived of the mattress and covers.  Plaintiff alleges that he was not given a mattress or covers for a week, and that his interaction with defendant Gibson occurred about a week after he was placed in the four-point restraint room.  There are no allegations suggesting that Defendant Gibson knew of and disregarded Plaintiff's needs prior to this interaction or after this interaction.

Accordingly, Plaintiff has failed to state an Eighth Amendment conditions of confinement claim.  If Plaintiff chooses to amend his complaint, he must state what each defendant did or did not do that violated his constitutional rights.  If he does not know the names of certain individuals, he may describe them to the best of his ability and name them as "Doe Defendants," such as "Doe Defendant 1, a correctional officer on xxx date," to be identified by name and substituted in as a party with the help of discovery during the litigation.

### D.  Refusal to Provide Pain Medication

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately

indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted).  Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.  To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff alleges that, after returning from the hospital, because of Defendant Lt. Scott's false statements, two nurses refused to provide Plaintiff with the pain medication that was prescribed by the hospital doctor.  This is the entirety of the allegations against the Doe nurses.

Plaintiff has failed to state a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment.  First, Plaintiff failed to sufficiently allege that he had a serious medical need for pain medication after he returned from the hospital.  Plaintiff does not

explain the extent of his injuries or his pain level.

Second, Plaintiff failed to provide allegations to support his conclusory allegation that the Doe nurses refused to provide him with pain medication because of Defendant Lt. Scott's false statements.  There are no allegations about what either nurse said or did that would suggest that they refused to provide pain medication to Plaintiff not for a medical reason, but because of Defendant Lt. Scott's false statements.

## V.    CONCLUSION AND ORDER

The Court has screened Plaintiff's Second Amended Complaint and finds that it states a cognizable Bivens claim for excessive force in violation of the Eighth Amendment against Defendants Lt. Scott, Officer Holmes, and Doe Officers.[3]  The Court also finds that Plaintiff's Second Amended complaint fails to state any other cognizable claims.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires."  Accordingly, the Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above.  Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000).  Plaintiff is granted leave to file an amended complaint within thirty days.

If Plaintiff chooses to file an amended complaint, the amended complaint must allege constitutional violations under the law as discussed above.  Specifically, Plaintiff must state what each named defendant did or did not do that led to the deprivation of Plaintiff's constitutional or other federal rights.  Fed. R. Civ. P. 8(a); Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff must also demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones, 297 F.3d at 934. Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Additionally, Plaintiff is advised that an amended complaint supersedes the original

---

[3] Plaintiff will be permitted to take discovery to determine the identity of the Doe Officers and will be given a deadline to identify those individuals so they can be served with the complaint.

complaint, <u>Lacey v. Maricopa County</u>, 693 F.3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and must be complete in itself without reference to the prior or superseded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Third Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Alternatively, Plaintiff may choose to stand on his Second Amended Complaint, in which case the Court will issue findings and recommendations to a district court judge consistent with this order.

Finally, Plaintiff may choose to notify the Court in writing that he does not want to file an amended complaint, and instead wants to proceed only on the claim found cognizable by the Court.

Based on the foregoing, it is HEREBY ORDERED that:

1.    The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.    Within thirty (30) days from the date of service of this order, Plaintiff shall either:

    a.  Notify the Court in writing that he wants to proceed only on his <u>Bivens</u> claim for excessive force in violation of the Eighth Amendment against Defendants Lt. Scott, Officer Holmes, and Doe Officers;

    b.  File a Third Amended Complaint; or

    c.  Notify the Court in writing that he wants to stand on his Second Amended Complaint, subject to the Court issuing findings and recommendations to a district judge consistent with this order.

3.    Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "Third Amended Complaint" and refer to the case number 1:20-cv-00086-EPG; and

\\\
\\\

16

4.      If Plaintiff fails to comply with this order, the undersigned may recommend

dismissal of the case for failure to comply with a court order and failure to

prosecute.

IT IS SO ORDERED.

Dated:   __July 21, 2020__               /s/ _Erica  P.  Grosjean_

                                         UNITED STATES MAGISTRATE JUDGE